**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Perry, | ) |
| Plaintiff, | )   No. CV-10-8229-PCT-PGR |
| vs. | ) |
| NorthCentral University, Inc., et al., | )   ORDER |
| Defendants. | ) |

Pending before the Court is the defendants' Motion to Dismiss (Doc. 8), wherein the defendants seek in part the dismissal of this employment-related action on the ground that all of the claims in this action are subject to arbitration. Having reviewed all the parties' memoranda directed at the arbitration issue in light of the relevant record, the Court finds that this action should be dismissed and the plaintiff compelled to arbitrate all of the claims in his First Amended Complaint.[1]

---

[1] While oral argument has been requested, the Court concludes that oral argument would not aid the decisional process.  The Court further concludes that the resolution of the arbitration-related portion of the Motion to Dismiss does not require an evidentiary hearing.

Background

The named defendants in this action, which was removed from the Yavapai County Superior Court on the basis of federal question jurisdiction, are Northcentral University, Inc., an on-line university located in Prescott Valley, Arizona, and NCU employees Clinton Gardner, NCU's president (and his unnamed spouse), Lloyd Williams, NCU's provost, and Karry Layette, NCU's vice president for human resources (and her unnamed spouse) (collectively "NCU"). Plaintiff Anthony Perry, who was the chairperson of NCU's school of psychology at the time of his termination on May 14, 2008, alleges in his First Amended Complaint that he was sexually harassed by Provost Williams, his immediate supervisor, that he complained about it to Vice President Layette in March 2008, that Layette did an incompetent investigation that concluded that no sexual harassment had taken place, and that President Gardner pretextually fired him after he complained about the quality of the investigation and the need to stop Williams' continuing sexual harassment.  The First Amended Complaint alleges nine claims: sexual, hostile and offensive environment in violation of the Arizona Civil Rights Act (ACRA), against NCU; retaliation in violation of ACRA, against NCU; breach of the implied covenant of good faith and fair dealing, against all defendants; intentional interference with contractual relations, against the individual defendants; intentional infliction of emotional distress, against all defendants; negligent infliction of emotional distress, against all defendants; assault, against Williams; sexual, hostile and offensive environment in violation of Title VII, against NCU; and retaliation in violation of Title VII, against NCU.

Perry, who received his Ph.D. in experimental psychology from Brandeis University in 1993, wrote to NCU in May 2006, expressing his interest in being

hired as the chairperson of its psychology school; at that time he was employed as an associate professor in the psychology department at North Carolina A & T State University and had taught psychology at that university since 1995. He came to NCU for an interview for the position on August 4, 2006, and was offered the position that same day; he accepted the position in writing on August 11, 2006. At the time of his interview, he was given a packet of employment-related forms to take back to North Carolina with him, including an employment application form and a staff handbook. The last page of the employment application was a signature page containing four separate paragraphs; Perry placed his initials next to each of the paragraphs on that page and signed the page on August 11, 2006. One of the four paragraphs was an arbitration provision that stated:

*ARP*  I hereby agree to submit to binding arbitration on all disputes and claims arising out of the submission of this application. I further agree, in the event that I am hired by Northcentral University, that all disputes that cannot be resolved by informal, internal resolution which might arise out of my employment with Northcentral University, whether during or after that employment, shall be submitted to binding arbitration. I agree that such arbitration shall be conducted under the rules of the American Arbitration Association. This application contains the entire agreement between the parties with regard to dispute resolution, either oral or written.

On August 11, 2006, Perry also signed the receipt page for NCU's employee handbook. That page, in the paragraph immediately above Perry's signature, contained an arbitration provision that stated:

The University and I hereby agree that any dispute arising out of or related to my employment at the University shall be settled by final and binding arbitration to be conducted in Yavapai County in accordance with the rules of the American Arbitration Association. Both parties acknowledge and agree that neither party shall be deprived of any rights or benefits established by Federal or Arizona State law by reason of this provision; this provision only provides for an agreed alternative method for dispute resolution. The costs of

arbitration, including consultants and attorneys fees, may be ordered reimbursed or otherwise allocated between the parties as determined in the arbitration proceedings.  If questions arise regarding the content or interpretation of this Handbook, I will bring them to the attention of the department director or the President.

On October 26, 2007, Perry signed the receipt page for NCU's revised employee handbook.  By signing the receipt, Perry acknowledged that he understood that the handbook replaced "any and all prior verbal and written communications regarding NCU working conditions, policies, procedures, appeal processes and benefits[,]" and that he had read and understood the handbook contents and would "act in accord with these policies and procedures as a condition of [his] employment with NCU."  The receipt page also contained an arbitration provision, in a separate paragraph, that was substantively identical to the one on the handbook receipt page that Perry signed in August 2006; the arbitration provision in the revised handbook stated:

NCU and I hereby agree that any dispute arising out of or related to my employment shall be settled by final and binding arbitration to be conducted in Yavapai County in accordance with the rules of the American Arbitration Association.  Both parties acknowledge and agree that neither party shall be deprived of any rights or benefits established by Federal or Arizona State law by reason of this provision; this provision only provides for an agreed alternative method for dispute resolution.  The costs of arbitration, including consultants and attorneys fees, may be ordered reimbursed or otherwise allocated between the parties as determined in the arbitration proceedings.

Discussion

Although NCU has filed a two-part Motion to Dismiss, the Court's only concern herein is that portion of the motion seeking the dismissal of this action in its entirety for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1)

and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*[2]  Since NCU states

that the relief it is seeking is an order dismissing Perry's claims and compelling

their arbitration, the Court has construed this portion of NCU's motion as being a

motion to compel arbitration pursuant to 9 U.S.C. § 4. *See* FDIC v. Artesa

Holdings, LLC, 2011 WL 2669231, at *1 (D.Ariz. July 7, 2011) (Court treated a

motion to dismiss for lack of subject matter jurisdiction that was based on the

existence of a binding arbitration clause as a motion to compel arbitration under

the FAA); Service Employees International Union, Local 707 v. Connex-ATC,

2006 WL 2975591, at *2 (N.D.Cal. Oct. 18, 2006) (Court, noting that the

existence of an arbitration provision did not deprive it of subject matter

jurisdiction, construed a motion to dismiss for lack of subject matter jurisdiction as

a motion to compel arbitration pursuant to the FAA.); *cf.* Craft v. Campbell Soup

Co., 177 F.3d 1083, 1084 n.4 (9th Cir. 1998) (Court treated a motion for summary

judgment as a *de facto* motion to compel arbitration), *abrogated on other grounds

by* Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001).  The Court has

applied a summary judgment-type standard in resolving NCU's motion. *See* e.g.*,*

Aliron International, Inc. v. Cherokee Nation Industries, Inc., 531 F.3d 863, 865

(D.C.Cir.2008) ("The district court properly examined CNI's motion to compel

arbitration under the summary judgment standard of Federal Rule of Civil

Procedure 56(c), as if it were a request for summary disposition of the issue of

whether or not there had been a meeting of the minds on the agreement to

---

[2]      NCU alternatively argues in its Motion to Dismiss that six of the
plaintiff's seven state law claims should be dismissed for failure to state a claim
pursuant to Fed.R.CiV.P. 12(b)(6) if the Court finds that the arbitration provision is
not enforceable.  Since the Court finds that the entirety of this action is arbitrable,
the Court does not reach the Rule 12(b)(6) portion of NCU's motion.

arbitrate."); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2nd Cir.2003) ("In the context of motions to compel arbitration under the Federal Arbitration Act ..., the court applies a standard similar to that applicable for a motion for summary judgment."); Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3rd Cir. 2009) (same).  A trial is necessary under the FAA only of there is an issue of fact as to the making of the agreement for arbitration, 9 U.S.C. § 4, and the Court, viewing the evidence of record and all reasonable inferences from that evidence in Perry's favor, concludes that Perry has not raised any significant issue of material fact directed at the enforceability of the arbitration agreements he signed.

The FAA broadly provides that written agreements to arbitrate controversies airing out of contracts involving commerce, which Perry does not dispute that the arbitration provisions at issue do, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Absent a valid contractual defense, the FAA mandates that district courts "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Bryd, 470 U.S. 213, 218 (1985) (emphasis in original).  Since Perry does not dispute that all of his claims in the First Amended Complaint fall within the purview of the  applicable arbitration provision, the Court's only role is to determine if a valid agreement to arbitrate exists.[3] Chiron Corp. v. Ortho

---

[3]

Perry also does not dispute that employment contract provisions that compel the arbitration of employment-related claims, even those statutorily-based, are generally valid under the FAA. *See* Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); EEOC v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742 (9th Cir.2003) (en banc) (Court concluded that an employer can require the arbitration of Title VII claims as a condition of employment.); Wernett v.

Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir.2000); 9 U.S.C. § 4.

     A. Unconscionability

     Perry argues in part that NCU's arbitration provision is unenforceable because it is both procedurally and substantively unconscionable.[4] Unconscionability is a generally applicable contract defense that may render an arbitration provision unenforceable under the FAA, Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996), and the determination of unconscionability in the arbitration context is determined according to the laws of the state of contract formation, here Arizona. Chalk v. T-Mobile USA, Inc., 560 F.3d 1087,

_____

Service Phoenix, LLC, 2009 WL 1955612, at *2 (D.Ariz. July 6, 2009) (Court noted that "claims under the [Arizona Civil Rights Act] are arbitrable to the same extent as Title VII claims.")

     To the extent that Perry contends in a supplemental memorandum (Doc. 21) that Arizona does not have any state policy favoring arbitration agreements in the employment context, that is irrelevant given the FAA's overriding federal policy favoring arbitration. See AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011); Johnson v. Gruma Corp., 614 F.3d 1062, 1066 (9th Cir.2010) ("When an agreement falls within the purview of the FAA, there is a strong default presumption ... that the FAA, not state law, supplies the rules for arbitration.") (Internal quotation marks omitted).  There is no clear and unmistakable evidence in the record that the parties agreed to apply non-federal arbitrability law.

   [4]

     NCU attached to its Motion to Dismiss only a copy of the arbitration provision set forth on the August 2006 employee handbook receipt page, and it is to that arbitration provision that Perry refers to in his response and in his declaration.  NCU attached to its reply copies of the arbitration provisions set forth in Perry's employment application and in the October 2007 revised employee handbook receipt page.  To the extent that it is an issue, the Court concludes that the applicable arbitration provision is the October 2007 one because Perry concedes in a supplemental memorandum that the defendants' alleged misconduct underlying his claims in the First Amended Complaint occurred after October 2007, and the October 2007 arbitration provision is the one that was in effect at the time of Perry's termination.

1092 (9th Cir.2009).  Under Arizona law, Perry bears the burden of proving the unenforceablity of the arbitration provision, and the determination of unconscionability is to be made by the Court as a matter of law. Maxwell v. Fidelity Financial Services, Inc., 907 P.2d 51, 56 (Ariz.1995); Taleb v. AutoNation USA Corp., 2006 WL 3716922, at *2 (D.Ariz. Nov. 13, 2006) ("Because a court order compelling arbitration is the functional equivalent of a summary disposition on the issue of the enforceability of the Arbitration Agreement, the burden is properly upon the Plaintiff to produce specific facts showing that such a triable issue exists.")  Unconscionability is determined as of the time the parties entered into the contract. Nelson v. Rice, 12 P.3d 238, 243 (Ariz.App.2000).

### 1. Procedural Unconscionability

Perry initially contends that the arbitration provision is a procedurally unconscionable contract of adhesion. The Court assumes, without deciding, that the arbitration provision constitutes an adhesion contract given Perry's uncontroverted statements in his declaration that signing the handbook agreement receipt containing the arbitration provision was a "take it or leave it" situation on his part because he was told that he had to sign it in order to be employed and he was never told that he could negotiate the arbitration provision.[5]

---

[5]
However, the Court notes that Perry only focuses on the "take it or leave it" aspect of the definition of an adhesion contract while essentially ignoring the remainder of the definition, *i.e.* the absence of meaningful choice for the party occupying the weaker bargaining position. *See e.g.*, Cooper v. MRM Investment Co., 367 F.3d 493, 501-03 (6th Cir.2004) (Court, considering the Tennessee definition of a contract of adhesion that is identical to that adopted by the Arizona courts, concluded that an arbitration agreement in an employment contract is not a contract of adhesion unless the employee bears his burden of establishing that he would be unable to find a suitable job if he refused to agree to arbitrate.) Perry has made no such showing.

*See* Broemmer v. Abortion Services of Phoenix, Ltd., 840 P.2d 1013, 1015 (Ariz.1992) (Court has stated that an adhesion contract "is typically a standardized form offered to consumers of goods and services on essentially a take it or leave it basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.")

The Court rejects, however, Perry's position that a finding that a contract is one of adhesion is a finding of procedural unconscionability. *See* R & L Limited Investments, Inc. v. Cabot Investment Properties, LLC, 729 F.Supp.2d 1110, 1115 (D.Ariz.2010) (Court noted that "it does not appear that there is any Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability. ... The fact that a given contract was a contract of adhesion is not itself dispositive, but relates to [the procedural unconscionability] factor about 'whether alterations in the printed terms were possible.'")  Under Arizona law, a contract of adhesion is presumptively valid and fully enforceable according to its terms unless the contract is unconscionable or beyond the range of reasonable expectations, Broemmer, 840 P.2d at 1016,  which are two distinct grounds for invalidating or limiting the enforcement of a contract. Maxwell, 907 P.2d at 57. *See also,* AT&T Mobility LLC v. Concepcion, 131 S.Ct. at 1750 (Court rejected the idea that arbitration agreements are *per se* unconscionable when found in adhesion contracts.)

Procedural unconscionability involves a finding that something was wrong in the bargaining process in that it "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." Maxwell, 907 P.2d at 57-58 (noting that relevant factors for determining the existence of procedural unconscionability, at

least in the commercial context, include "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.")

The Court concludes as a matter of law that while the arbitration provisions had certain adhesive "take it or leave it" qualities, none of the provisions were procedurally unconscionable at the time Perry signed them.  First, while Perry states in his declaration that he was told that he had to sign the August 2006 handbook receipt if he wanted to be employed at NCU, that he was never told by any NCU official that he could negotiate the arbitration provision, and that he does not remember reading the arbitration provision contained in that receipt, he offers no evidence that NCU attempted to deceive him about the existence of that arbitration provision or either of the other two arbitration provisions, or prevented him from inquiring about the meaning of any of the arbitration provisions.  He also states in his declaration that he vaguely remembers signing the August 2006 handbook receipt and that the signature on that receipt is his, and he does not offer any evidence disputing that he also signed the pages containing the other two arbitration provisions, nor has he submitted any evidence showing that he did not have the opportunity to read any of the arbitration provisions before signing them.  Furthermore, he does not dispute that each of the three arbitration provisions was located in plain sight on a signature page, that none of them was in fine print and that each was in the same size font as the rest of the signature page, and that each was written in easily understood language. *See* EEOC v. Cheesecake Factory, Inc., 2009 WL 1259359, at *3 (D.Ariz. May 6, 2009) (Court

concluded that an arbitration provision contained in an employee handbook was not procedurally unconscionable in part because the plaintiffs offered no evidence that the employer attempted to deceive them about the arbitration provision or pressured them to sign the agreement under exigent circumstances or prevented them from inquiring about the meaning of the arbitration provision, and because the plaintiffs both initialed the arbitration provision and signed the bottom of the handbook page containing the arbitration provision.)

Second, while Perry also states in his declaration that during his employment nobody at NCU ever explained the arbitration provision to him or discussed the American Arbitration Association with him or gave him a copy of its rules, and that he did not know anything about the organization during his employment, he does not dispute that he is a highly educated individual with a doctorate degree who had the intellectual capacity to read and understand the arbitration provisions, and who had the ability and opportunity through the internet to access and review the rules of the American Arbitration Association prior to signing any of the arbitration provisions. Harrington v. Pulte Home Corp., 119 P.3d 1044, 1052 n.9 (Ariz.App.2005) (In finding that an arbitration provision was enforceable, court noted that the rules of the American Arbitration Association are available publically on-line); Godhart v. Direct Alliance Corp., 2011 WL 2713977, at *3 (D.Ariz. July 13, 2011) (Court concluded that an arbitration provision in an employment contract was not procedurally unconscionable notwithstanding that the employer did not give the plaintiff a copy of the rules of the American Arbitration Association.)

Third, Perry does not dispute that he was employed as a psychology professor at another university at the time he accepted the position at NCU, nor has he offered any evidence that he would have refused to accept employment at

NCU, or would have refused to continue that employment, had he read the arbitration provisions he signed. *See* Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 229 (3ʳᵈ Cir.2008) (Court, in holding that an arbitration provision in an employment contract was enforceable under the FAA, concluded that the provision was not procedurally unconscionable because the plaintiff did not lack a meaningful choice in accepting the arbitration provision given that he was a highly-educated person with various employment opportunities who accepted the employment offer without examining the terms of that employment.)

2. Substantive Unconscionability

Perry alternatively argues that the arbitration provision is unenforceable because it is substantively unconscionable.  Substantive unconscionability is concerned with the relative fairness of the actual terms of the contract, *i.e.* whether they are unjust or one-sided. Maxwell, 907 P.2d at 58.  "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* at 59.  A showing of substantive unconscionability can alone establish a claim of unconscionability. *Id.*  The Court concludes as a matter of law that none of the arbitration provisions are substantively unconscionable.

Perry, who does not dispute that the arbitration provisions did not impose an overall imbalance in the obligations and rights of the parties given that the terms of the arbitration provisions applied equally to NCU, alleges that the arbitration provision is substantively unconscionable for three reasons.  The first reason advanced by Perry is that the August 2006 receipt agreement gave NCU the right to unilaterally modify or terminate the terms of the employee handbook agreement, including the terms of the arbitration provision, without giving the

employee the same right.[6]

The Court is not persuaded by Perry's contention since the applicable handbook receipt for purposes of this issue is not the August 2006 one, but the revised October 2007 handbook receipt agreement as that is the one that was in effect at the time of Perry's termination and which covered the time period in which Perry's alleges the wrongful acts against him took place.  The October 2007 receipt agreement, which stated that it was replacing "any and all prior verbal and written communications regarding NCU working conditions, policies, procedures, appeal processes and benefits," did not contain any similar unilateral policy modification language.

The second reason advanced by Perry is that the arbitration provision requires posting fees that he cannot pay and which may not be required in the judicial system.  Perry supports his contention with his declaration, dated November 1, 2010, wherein he states in relevant part:

> 8.  I have now been informed of the costs of arbitration which I would be required to pay, including portions of the fees of the arbitrator and hearing room.  I cannot afford to pay these costs, and I am now aware that these costs are not costs I would incur in litigation.
> 9.  My financial situation became so bad after my termination from NCU on May 14, 2008 that I had to contemplate filing bankruptcy in 2009. I did not file bankruptcy, but my finances are extremely tight at this time.  Even though the costs of arbitration may be reimbursed to me if I prevail in an arbitration before the American Arbitration Association, I cannot afford to pay those costs in the first place before I get the chance to prevail in an arbitration.

While the Supreme Court has recognized that an arbitration agreement may be unenforceable if the existence of large arbitration costs preclude a litigant

---

[6]

The August 2006 receipt agreement stated in relevant part: "I understand that except for the employment at-will status, any and all policies or practices may be changed at any time by the University."

1
2
3
4
5
6
7
8
9
10

from effectively vindicating his federal statutory rights in the arbitral forum, <u>Green Tree Financial Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 90 (2000), it also has made it clear that a party seeking to invalidate an arbitration agreement on the ground that the arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs, and that the mere risk that the plaintiff "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." <u>Id.</u> at 91-92.  Arizona has adopted the <u>Randolph</u> test in resolving claims that arbitration costs render an arbitration agreement substantively unconscionable. <u>Harrington v. Pulte Home Corp.</u>, 119 P.3d at 1055-56.

11
12
13
14
15
16
17
18
19
20

Perry has not met his burden of proving that an arbitral forum would be financially inaccessible to him inasmuch as he provides only conclusory statements in his declaration regarding his current ability to pay arbitration costs[7]; what Perry has not submitted is any information, much less specifics, of the costs associated with an arbitration conducted through the American Arbitration Association or any information regarding its procedural rules applicable to indigent claimants, or how arbitration costs compare to the litigation costs he would incur in this action, or any specifics concerning his financial situation that would make arbitration costs prohibitively expensive.  In <u>Harrington</u>, the court concluded that the arbitration clause was not substantively unconscionable

21
22
23
24
25
26

[7]

As previously noted, unconscionability is determined as of the time the arbitration provision is executed, not the time a complaint is filed. <u>Allied Waste North America, Inc. v. ITS Enterprises, Inc.</u>, 2009 WL 798867, at *3 (D.Ariz. March 25, 2009) ("Substantive unconscionability must be determined at the time of contracting, because to 'judge the substantive fairness of a contract at a subsequent date would nullify many contracts entailing a speculative element.'") (quoting <u>Seeking v, Jimmy GMC of Tucson, Inc.</u>, 638 P.2d 210, 216 (Ariz.1981)).

because the plaintiffs' allegations about the potential cost of arbitration were too speculative:

> The affidavits submitted by the five named appellees stated that they could not afford the cost of arbitration, either because they are retired and live on a 'modest fixed income' or self-employed and live on a 'low fixed income.' ... The affidavits offer no specific facts regarding appellees' financial situations, only conclusory statements. There is no showing of assets or why arbitration costs would be a hardship, let alone a *prohibitive* hardship as required by *Randolph*. ... They do not even show arbitration will put them in any worse position than litigation in allowing them to pursue their claims. As such, the allegation that arbitration is substantively unconscionable on this record is speculative at best. (Emphasis in original).

119 P.3d at 1056; *accord,* <u>Jones v. General Motors Corp.</u>, 640 F.Supp.2d 1124, 1132-33 (D.Ariz.2009) (Court, citing <u>Harrington</u>, concluded that the fee provision in the arbitration agreement was not substantively unconscionable notwithstanding the plaintiff's allegation that he might be forced to pay expenses that he might not have to pay in a judicial forum because the plaintiff's affidavit offered only conclusory statements regarding his inability to pay; court also noted that the rules of the American Arbitration Association provide that administrative fees may be deferred or reduced for indigent parties.); <u>Batory v. Sears, Roebuck and Co.</u>, 456 F.Supp.2d 1137, 1141 (D.Ariz.2006) (Court rejected the plaintiff's argument that an arbitration provision in an employment contract was substantively unconscionable due to the costs involved because the plaintiff had failed to demonstrate with specific evidence that the non-waivable $150 filing fee was prohibitively expensive.); <u>Price v. HotChalk, Inc.</u>, 2010 WL 5137896, at *4 (D.Ariz. Dec. 10, 2010) (Court concluded that the plaintiff's conclusory allegation that the cost of arbitration could potentially force him to give up his claims due to his precarious financial position was not specific enough to make the arbitration agreement substantively unconscionable.)

The third reason advanced by Perry as to why the arbitration provision is

substantively unconscionable is based on the language found in the arbitration provision in both of the handbook receipt agreements that stated that "[t]he costs of arbitration, including consultants and attorneys fees, may be ordered reimbursed or otherwise allocated between the parties as determined in the arbitration proceedings."  The gist of Perry's argument is that this arbitration provision language potentially places him at greater risk to pay attorneys' fees to the defendants should he lose his federal civil rights claims than he would have in a judicial forum because under federal law he would only have to pay attorneys' fees if his claims were determined to be frivolous, unreasonable, without foundation or brought in bad faith, as set forth in <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978).

Perry's position is not persuasive for several reasons.  First, he does not cite to any supporting Arizona-based law.  Second, his position is speculative in that he does not make any effort to supply or discuss any procedural rules of the American Arbitration Association governing the payment of attorneys' fees by the losing party.  Third, his position ignores the fact that the same arbitration provisions specifically state that "[b]oth parties acknowledge and agree that neither party shall be deprived of any rights or benefits established by Federal or Arizona State law by reason of this provision."

B. Reasonable Expectations

Perry also argues that the adhesive arbitration provision is unenforceable in part because he did not reasonably expect that he had to arbitrate employment-related disputes.  Under the "reasonable expectation" doctrine, while a party is typically bound by the terms of an adhesion contract even when they do not know the details of the contract terms, they are not bound by the unknown terms of the contract that are beyond the range of reasonable expectation.

Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 682 P.2d 388, 396 (Ariz.1984); Broemmer, 840 P.2d at 1017.  Arizona law provides that a contract term is beyond the range of reasonable expectation if one party to the contract has reason to believe that the other party would not have accepted the agreement if that party had known that the agreement contained the particular term at issue. Harrington v. Pulte Home Corporation, 119 P.3d at 1050 (holding that the reasonable expectation doctrine did not prohibit the enforceability of an arbitration clause in a contract of adhesion). This "reason to believe" may be (1) shown by prior negotiations, (2) inferred from the circumstances, (3) inferred from the fact that the provision at issue is bizarre or oppressive, (4) shown by the fact that the provision at issue eviscerates the agreed-to non-standard terms, (5) proved if the provision eliminates the dominant purpose of the transaction, (6) shown if the provision cannot be understood if the party challenging it attempts to check on his rights, and (7) shown by any other facts relevant to what the challenging party reasonably expected from the contract. Id. at 1050-51; Darner, 682 P.2d at 397.

Perry, who does not specifically cite to the Harrington factors, has not offered any evidence raising an issue of fact supporting the invocation of the reasonable expectations rule and the Court concludes as a matter of law that none of the arbitration provisions were beyond Perry's reasonable expectations.

As to the first and second Harrington factors, there is no evidence or reasonable inferences in the record to establish that any employee of NCU had said or done anything prior to the times that Perry signed any of the documents containing the arbitration provisions to cause him to believe that there would not be an arbitration provision. Harrington, 119 P.3d at 1051; Wernett v. Service Phoenix, LLC, 2009 WL 1955612, at *4 (Court, in concluding that the reasonable

- 17 -

expectations rule did not bar the enforcement of an arbitration provision in an employment contract, noted in part that "an employment contract may or may not include an agreement to arbitrate, so there is no basis to conclude that [the employer] had reason to believe that Wernett opposed the terms of the arbitration.")  Furthermore, that NCU would not have inferred from the circumstances that Perry opposed the arbitration provision in the October 2007 handbook receipt is readily apparent from the fact that Perry had already signed two other arbitration provisions in October 2006.

As to the third and sixth factors, the language of all three arbitration provisions is clear and plain and in no way bizarre or oppressive - rather than being out of the mainstream, the provisions contain standard terms that Perry could have readily understood had he reviewed them. *Id.* at 1051-52; Wernett, 2009 WL 1955612, at * 4 (Court noted that the inclusion of an arbitration provision in an employment agreement is not bizarre or oppressive given the strong public policy favoring arbitration.)

As to the fourth and fifth factors, none of the terms of any of the arbitration provisions eviscerate any non-standard terms specifically agreed to by the parties or otherwise eliminate the employment relationship that was the dominant purpose of the parties' agreement. *Id.*  Although Perry argues that he did not reasonably expect to have to arbitrate his dispute with NCU because he followed NCU's internal administrative dispute resolution policy set forth in its October 2007 revised handbook in pursuing his sexual harassment dispute against NCU and Provost Williams, the existence of that internal procedure in no way eviscerated the arbitration provision given that the purpose of the arbitration process is to replace a judicial forum, not an initial informal administrative dispute

- 18 -

resolution policy.[8]

As to the final factor, the underlying premise of a reasonable expectations argument is that the party invoking the doctrine is claiming that he would not have entered the contract had he known the clause at issue was present. Harrington, at 1052.  Perry has not submitted any evidence that he would not have accepted employment at NCU had he known about the arbitration requirement; in fact, Perry states in his declaration that he "very much wanted to be employed" at NCU at the time he signed the initial handbook receipt in August 2006.  Perry has also not submitted any evidence that he would have quit his employment at NCU in October 2007 had he known about the arbitration provision in the revised handbook. Smith v. Autonation, Inc., 2011 WL 380517, at *2 (D.Ariz. Feb. 2, 2011) (Court rejected argument that an arbitration provision in an employment contract was invalid under the reasonable expectations doctrine in part because the plaintiff did not assert that had she read the arbitration agreements she would have declined to work for the defendants.)

Perry's reasonable expectations-related argument is based almost solely on Broemmer v. Abortion Services of Phoenix , Ltd., which the Court concludes does not govern the situation here as it is factually inapposite.  The Broemmer court held that an adhesive arbitration agreement that the plaintiff signed prior to undergoing a clinical abortion did not bar the plaintiff's medical malpractice suit because the agreement was unenforceable inasmuch as it fell outside of the plaintiff's reasonable expectations. In so ruling, the court made it clear that it "was

---

[8]

        The arbitration provision in the employment application that Perry signed in August 2006 specifically provided that employment-related disputes that "cannot be resolved by informal, internal resolution" would be resolved through arbitration.

declin[ing] the invitation to write a sweeping, legislative rule concerning all
agreements to arbitrate" and was basing its decision on the specific facts of that
case. 840 P.2d at 1018.  The relevant facts underlying the court's conclusion that
the arbitration agreement was a contract of adhesion outside of the plaintiff's
reasonable expectations were the following: at the time she signed the arbitration
agreement the plaintiff was 21 years old, unmarried, was a  high school graduate
earning less that $100 per week with no medical benefits, was 16 or 17 weeks
pregnant, and was not experienced in commercial matters and was unsure of
what arbitration was; she was then under considerable confusion and emotional
and physical turmoil because the father-to-be was insisting that she have an
abortion while her parents were against it; the day before she had the abortion
she went to the clinic and was given the arbitration agreement, as well a consent-
to-operate form and a medical questionnaire, all of which she completed in less
than five minutes; and the clinical staff made no attempt to explain the purpose of
the arbitration agreement to the plaintiff either before or after she signed it and
did not provide her with a copy of the agreement.

Notwithstanding Perry's contention that all of the types of evidence found in
Broemmer to invalidate the arbitration clause under the reasonable expectations
rule are applicable to him, Perry's situation at the time he signed the arbitration
provisions was vastly different from Broemmer's.  As already noted, Perry is a
highly-educated professional who was fully capable of understanding the
arbitration provisions, he had a significant amount of time in which to review at
least the first two arbitration provisions before he signed the documents
containing them and he had the ability to research the American Arbitration
Association and its rules had he wanted to, and there is no significant evidence
that he was under any physical or emotional turmoil or other external pressures at

the time he signed any of the arbitration documents that drove him to sign them without reviewing them.

C. Waiver

Perry further argues in his response and in two supplemental memoranda that NCU waived its right to enforce the arbitration procedure by initially engaging in its internal administrative dispute resolution process set out in its October 2007 employee handbook.  The Court disagrees.

The determination of whether NCU waived its right to compel arbitration, as opposed to the issue of whether the arbitration provisions are unenforceable under Arizona law, is controlled solely by federal law. Sovak v. Chugai Pharmaceutical Co., 280 F.3d 1266, 1270 (9th Cir.2002), *as amended*, 289 F.3d 615 (9th Cir.2002).  Under federal law, in order to establish a waiver, Perry bears a heavy burden of proving (1) that NCU had knowledge of its existing right to compel arbitration, (2) NCU acted inconsistently with that existing right, and (3) that he suffered prejudice from NCU's delay in moving to compel arbitration. *Id.* Because waiver of the right to arbitration is disfavored given the FAA's preference for arbitration, any doubt concerning an allegation of waiver must be resolved in favor of arbitration. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).  The Court concludes as a matter of law that NCU did not waive its right to compel arbitration because, as the Court has already noted, NCU's initial use of its internal administrative dispute resolution process is simply not inconsistent with its right to require arbitration once Perry commenced this action.

D. Dismissal

Since the arbitration provisions that Perry agreed to are neither unconscionable nor beyond his reasonable expectations, the Court concludes

that arbitration must be compelled pursuant to the FAA.  9 U.S.C. § 4.  Since all of the claims arising out of Perry's First Amended Complaint are arbitrable, the Court, in the exercise of its discretion, *see* Sparling v. Hoffman Construction Co., 864 F.2d 635, 638 (9th Cir.1988), further concludes that the dismissal of this action, rather than a stay pending arbitration, is appropriate.  Therefore,

IT IS ORDERED that the plaintiff's Motion to File Supplemental Authority Regarding Defendant's Motion to Dismiss Under Rule 12(b)(1), Fed.R.Civ.P. Dealing with the Arbitration Issue (Doc. 21) is granted.

IT IS FURTHER ORDERED that the defendants' Motion to Dismiss (Doc. 8) is granted to the extent that this action is dismissed without prejudice inasmuch as all of the plaintiff's claims in his First Amended Complaint are subject to the arbitration provision in defendant Northcentral University, Inc.'s October 2007 employee handbook, and the parties are directed to proceed to arbitration before the American Arbitration Association in accordance with the terms of that arbitration provision.  The Court makes no ruling regarding the alternative Fed.R.Civ.P. 12(b)(6) portion of the Motion to Dismiss.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

DATED this 19th day of September, 2011.

Paul G. Rosenblatt
United States District Judge